DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

FRANCISCA A. BOUGOUNEAU,

        Plaintiff,

    v.                                      Civil Action No. 2020-0082

HESS CORPORATION and HESS OIL
NEW YORK CORP, *as successor by merger with*
HESS OIL VIRGIN ISLANDS CORP, and
VIRGIN ISLANDS INDUSTRIAL
MAINTENANCE CORP.,

        Defendants.

**Attorneys:**
**J. Russell B. Pate, Esq.,**
St. Thomas, U.S.V.I.
**Korey A. Nelson, Esq.,**
New Orleans, LA
    *For Plaintiff*

**Carl A. Beckstedt, III, Esq.,**
**Robert J. Kuczynski, Esq.,**
St. Croix, U.S.V.I.
**Carolyn F. O'Connor, Esq.,**
**Joseph T. Hanlon, Esq.,**
Florham Park, NJ
    *For Defendants Hess Corporation and*
    *Hess Oil New York Corp, as successor*
    *by merger with Hess Oil Virgin Islands*
    *Corp.*

**MEMORANDUM OPINION**

**Lewis, District Judge**

THIS MATTER comes before the Court on the "Motion for Remand to the Superior Court" (Dkt. No. 10) filed by Plaintiff Francisca A. Bougouneau ("Plaintiff"). Plaintiff argues that this Court lacks subject matter jurisdiction over this matter due to the inclusion of a nondiverse defendant in Plaintiff's Amended Complaint. *Id.* at 2-3. Defendants Hess Corporation and Hess

Oil New York Corp. ("Defendants") filed a "Response in Opposition to Plaintiff's Motion to Remand" (Dkt. No. 22) claiming that the nondiverse defendant, Virgin Islands Industrial Maintenance Corp., was improperly joined in the case in violation of 28 U.S.C. § 1447(e), and should be stricken from the Amended Complaint. (Dkt. No. 22 at 3, 24). Thus, Defendants maintain that complete diversity exists and Plaintiff's Motion for Remand should be denied. *Id.*[1]

For the reasons discussed below, Plaintiff's Motion for Remand will be granted.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Bougouneau filed this action in June 2020, in the Superior Court of the Virgin Islands, St. Croix Division, against Defendants Hess Corp. ("Hess"), a Delaware Corporation based in New York, and Hess Oil Virgin Islands Corp. ("HOVIC"), a Virgin Islands corporation with its principal place of business in New York. (Dkt. No. 1-1 at 1). The claims in this case are reportedly similar—if not identical—to claims asserted in approximately 500 or more cases filed in the St. Croix Division of the Superior Court between 2013 and 2018 against Hess and its wholly owned subsidiary, HOVIC. (Dkt. Nos. 22-1 at 6; 22-2; 22-14). Those cases, brought on behalf of former workers at HOVIC's oil refinery on St. Croix, asserted state law tort claims for asbestos-related injuries allegedly sustained by the workers. Those cases settled shortly before the trial of two of the cases, with the settlements finalized in 2019. (Dkt. No. 22-1 at 3-4). According to Defendants, most—if not all—of the plaintiffs in those cases were represented by the attorneys who are representing Plaintiff in the instant matter. (Dkt. No. 22-2).[2] Although some of those

---

[1] To address Defendants' arguments, Plaintiff has filed a "Notice to Court Regarding Jurisdictional Discovery." (Dkt. No. 24). Any need for such discovery is rendered moot by the Court's ruling herein.

[2] The filings and Court Orders reflect that the cases ultimately were handled in the Complex Litigation Division of the Superior Court. (Dkt. Nos. 10 at 3; 22-2). Over 100 of the pre-2020 cases were consolidated for discovery and pretrial matters (Dkt. Nos. 22-1 at 2; 22-2), and the remainder

earlier cases were initially brought against several defendants, counsel for the plaintiffs started to "streamline" the cases by dismissing claims against defendants other than Hess and HOVIC in cases that were already filed, and naming only Hess and HOVIC as defendants in new cases. (Dkt. Nos. 22 at 5; 22-8; 22-9). Because HOVIC was incorporated as a Virgin Islands corporation prior to 2020, none of those cases could be removed to the District Court.

In June 2020, approximately 35 new cases were filed against Hess and HOVIC in the Superior Court asserting the same asbestos-type claims by former oil refinery workers. All of these cases named Hess and HOVIC as defendants, although a few of the cases also included other defendants such as Glencore Ltd. and/or Lockheed Martin Corp. *See, e.g., St. Rose v. Hess Corp., et al.*, No. 1:2020-cv-0069; *Mathurin v. Hess Corp., et al.*, No. 1:2020-cv-0058. Hess removed most of these cases to this Court in late August 2020 after being served with process. *See, e.g., Bhola v. Hess Corp., et al.*, No. 1:2020-cv-0040, Dkt. No. 1; *Younge v. Hess Corp., et al.,* No. 1:2020-cv-73, Dkt. No. 1. Hess asserted that diversity jurisdiction now existed because HOVIC had merged with Hess Oil New York Corp ("HONYC")—a New York corporation with its principal place of business in New York—in May 2020. *Id.*[3] Before Hess or any other defendant filed Answers, all but approximately six of these cases were voluntarily dismissed by the named plaintiffs under FED. R. CIV. P. 41(a)(1)(A)(i) and refiled in the Superior Court with Virgin Islands Industrial Maintenance Corp.—a local entity—as an additional defendant. *See, e.g., Bhola*, No. 1:2020-cv-0040, Dkt. No. 1-1; *Bhola v. Hess Corp., et al.,* No. 1:2021-cv-0024, Dkt. No. 1-1.

---

of the cases were grouped together with the consolidated cases under a Master Case for purposes of case coordination (Dkt. No. 22-7).

[3] Hess also reports that 14 new cases were filed in the Superior Court in March 2020, before the HONYC/HOVIC merger. Those cases remain pending in the Superior Court. (Dkt. No. 22-1 at 5).

3

While the cases removed in August 2020 were pending in this Court, other former refinery workers filed separate actions in the Superior Court against Hess and HOVIC. As in the prior cases, these plaintiffs assert that Hess and HOVIC are liable to them for an underlying lung disease they allegedly developed due to their claimed exposure to asbestos, silica and other toxic substances while working at the oil refinery. As of October 15, 2020, the plaintiffs in these cases—and in some of the June 2020 cases—had not served Hess or HOVIC with process. (Dkt. No. 1 at 2).

Notwithstanding Plaintiff's failure to serve the summons and Complaint, Hess removed the instant action and others to this Court on October 15, 2020 pursuant to 28 U.S.C. § 1446. (Dkt. No. 1 at 2). Hess filed Answers in all of the cases on the date the cases were removed. (Dkt. Nos. 1, 3). In its Notice of Removal, Hess again asserted that the HONYC/HOVIC merger created complete diversity between Plaintiff and Defendants. (Dkt. No. 1 at 2). Shortly thereafter, HONYC/HOVIC filed a "Consent to Removal" (Dkt. No. 5) and an Answer to Plaintiff's Complaint. (Dkt. No. 6). In their Answers, both Hess and HONYC/HOVIC raised, *inter alia*, affirmative defenses of comparative fault and contribution, and alleged that fault for any injuries lies with contractors at the oil refinery. (Dkt. Nos. 3 at 13-17; 6 at 13-17).

Nineteen days after Hess' Answer was filed, Plaintiff filed an Amended Complaint, pursuant to Rule 15(a)(1)(B), reasserting her claims against Hess and HONYC/HOVIC, and adding Virgin Islands Industrial Maintenance Corp. ("IMC") as a defendant. (Dkt. No. 9).[4] With

---

[4] IMC was a contractor at HOVIC's St. Croix refinery from 1986 to 1999. (Dkt. No. 22-1 at 3). In her Motion for Remand, Plaintiff asserts that she delayed serving Hess and HOVIC with the summonses in the Superior Court action "in anticipation of amending" her Complaint in Superior Court to add IMC. (Dkt. No. 10 at 1 n.2). However, Plaintiff states that Hess discovered her case through the Superior Court's new e-filing system and removed the case before she could file the Amended Complaint in the Superior Court. *Id.* The Court takes Judicial Notice of its own records which reflect that Hess removed approximately 24 cases to this Court, including the instant case,

regard to IMC, Plaintiff asserts that it is a Virgin Islands corporation with its principal place of business in the Virgin Islands. *Id.* at 1. Plaintiff further alleges that IMC was the principal supplier of maintenance laborers at HOVIC's oil refinery and that it had primary responsibility for training workers to identify, abate, and remove asbestos, and warning workers of its dangers. *Id.* at 2. Plaintiff claims that IMC lacked the expertise to identify the toxic substances or to train refinery workers; failed to timely adopt occupational safety and health policies and procedures in handling toxic substances; and failed to provide adequate and appropriate personal protective equipment to reduce or prevent exposure of oil refinery workers to toxic substances. *Id*. at 4-5.

On the same day that Plaintiff filed the Amended Complaint, she filed the instant Motion asking the Court to remand this action to the Superior Court. (Dkt. No. 10). Plaintiff argues that she is entitled to amend her Complaint as a matter of course under FED. R. CIV. P. 15(a)(1)(B) and that she timely did so. Plaintiff further asserts that, with the addition of IMC as a defendant, complete diversity does not exist among the parties. Because her Amended Complaint includes no claims under federal law, Plaintiff contends that the case should be remanded to the Superior Court. *Id* at 1-2.

Defendants thereafter filed a Response in Opposition to Plaintiff's Motion to Remand, with a number of attachments pertaining to prior asbestos cases brought against Defendants by Plaintiff's attorneys. (Dkt. No. 22). Defendants assert that Plaintiff's ability to amend her Complaint as a matter of course was limited by 28 U.S.C. § 1447(e), and that under that statute, the Court should reject the Amended Complaint and retain jurisdiction of this matter. Defendants assert that because IMC was added as a defendant *after* the action was removed, the Court must

---

in October 2020—all involving similar complaints. In its Notices of Removal in these cases, Hess reported that it had not yet been served with process.

consider the propriety of the joinder under 28 U.S.C. § 1447(e), which requires the weighing of various factors announced in *Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir. 1987), as adopted in *Hayden v. Westfield Ins. Co.*, 586 F. App'x 835, 840-41 (3d Cir. 2014).

After the filing and removal of the instant case, Plaintiff's attorneys filed at least 140 more asbestos-related cases in the Superior Court naming Hess, HONYC/HOVIC, and IMC as defendants. Hess removed all of these cases to this Court asserting that complete diversity exists under the circumstances. *See, e.g., Duncan v. Hess Corp., et al.,* No. 1:2021-cv-0003, Dkt. No 1; *Farrow v. Hess Corp., et al.,* No. 1:2021-cv-0017, Dkt. No 1; and *Louis v. Hess Corp., et al.*, 1:2021-cv-0158, Dkt. No. 1.

## II.   APPLICABLE LEGAL PRINCIPLES

### A.   Diversity Jurisdiction

It is axiomatic that federal courts are courts of limited subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts possess subject matter jurisdiction only over cases that present a federal question, 28 U.S.C. § 1331, or when diversity of citizenship exists and the value of the claim meets or exceeds $75,000, 28 U.S.C. § 1332(a). The burden of establishing a federal court's subject matter jurisdiction rests on the party invoking that jurisdiction. *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 395 (3d Cir. 2016); *The Fred, LLC v. Capstone Turbine Corp.*, No. 1:2020-cv-0029, 2021 WL 1082513, at *1 (D.V.I. Mar. 17, 2021).

For diversity jurisdiction to exist under 28 U.S.C. § 1332(a)(1), there must be complete diversity of citizenship between the parties, in that "no plaintiff can be a citizen of the same state as any of the defendants." *Walthour v. City of Philadelphia*, __ F. App'x __, 2021 WL 1608551, at *2 (3d Cir. Apr. 26, 2021). The Court has an independent and ongoing obligation to ensure that

it has subject matter jurisdiction over an action, and to raise the issue *sua sponte* even when the parties fail to raise it. *Seneca Res. Corp. v. Township of Highland*, 863 F.3d 245, 252 (3d Cir. 2017).

      **B.**      **Removal of Cases from Superior Court**

A defendant in a state court civil action may remove the case to federal court if the federal court would have had jurisdiction to hear the matter in the first instance. 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). The removal/remand procedures are controlled, in part, by 28 U.S.C. § 1447. That statute provides, in relevant part:

> **(c)** A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). *If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. . . .*
> . . .
> **(e)** If after removal the plaintiff *seeks* to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.

28 U.S.C. § 1447 (emphasis added). Further, removal is not permitted if any of the defendants properly joined and served is a resident of the forum state. 28 U.S.C. § 1441(b)(2).

Removal statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand. *Abels v. State Farm Fire & Cas. Co.*, 770 F.2d 26, 29 (3d Cir. 1985); *The Fred, LLC,* 2021 WL 1082513, at *1. The strict construction of removal statutes honors Congress' power to determine the contours of the federal court's limited subject matter jurisdiction. *See Bowles v. Russell*, 551 U.S. 205, 212-13 (2007) ("Because Congress decides whether federal courts can hear cases at all, it can also determine when, and under what conditions, federal courts can hear them."); *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941) (removal statute evidences Congress' purpose to restrict the jurisdiction of the federal courts on removal); *see also Carlsberg Resources Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254,

1257 n.8 (3d Cir. 1977) (Congress has zealously restricted diversity jurisdiction, "relieving the federal courts of the overwhelming burden of 'business that intrinsically belongs to the state courts' in order to keep them free for their distinctive federal business").

The defendant bears the burden of establishing removal jurisdiction. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). The removing party "bears the burden of showing, at all stages of the litigation, that the case is properly before the federal court." *Frederico v. Home Depot*, 507 F.3d 188, 193 (3d Cir. 2007) (citations omitted).

### III. DISCUSSION

Plaintiff's Motion for Remand requires the Court to construe and consider the applicability of two key provisions: FED. R. CIV. P. 15(a) and 28 U.S.C. § 1447(e).

Since the adoption of the Federal Rules of Civil Procedure in 1937, Rule 15(a) has always allowed pleadings to be amended once, as a matter of course, within a specified period of time. 6 CHARLES A. WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1480 (3d ed.) (discussing amendments under Rule 15(a)(1)). Normally, such amendments are automatic and require no court action. *Route 27, LLC v. Getty Petroleum Marketing, Inc.*, No. 10-3080-FLW, 2011 WL 1256618, at *3 (D.N.J. Mar. 30, 2011).

In 2009, Rule 15(a) was amended to its current form, which provides:

> **(1) Amending as a Matter of Course.** A party may amend its pleading once as a matter of course within:
>
> > (A) 21 days after serving it, or
> >
> > (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier.

FED. R. CIV. P. 15(a)(1). Here, Plaintiff's Amended Complaint was filed 19 days after Hess filed its Answer, and 11 days after HONYC/HOVIC filed its Answer. (Dkt. Nos. 3, 6, 10).

8

The Court also must consider 28 U.S.C. § 1447(e). This statutory provision states that "[i]f after removal the plaintiff *seeks to join* additional defendants whose joinder would destroy subject matter jurisdiction," the court has the discretion to deny joinder or to permit joinder and remand the case to the State court. 28 U.S.C. § 1447(e) (emphasis added). District courts have substantial discretion in deciding whether to permit joinder of a nondiverse defendant. *Taylor v. GGNSC Philadelphia, LP*, No. 14-cv-7100, 2015 WL 5584781, at *4 (E.D. Pa. Sept. 23, 2015).

A.  **Differing Legal Standards**

Plaintiff starts from the premise that Rule 15(a)(1) permits her to amend her Complaint once as a matter of course within a certain time period—without any court intervention. (Dkt. No. 10 at 2-3). Defendants argue, on the other hand, that notwithstanding Rule 15(a)(1), amendments post-removal that involve the addition of defendants that would destroy diversity jurisdiction are governed by 28 U.S.C. § 1447(e), and can be permitted or denied by the Court upon consideration of certain factors. (Dkt. No. 22 at 11-23). There is a split of authority on this issue. *See Gumberg Assocs.-Chapel Square v. Keybank Nat'l Ass'n*, No. 2:20-cv-01661-CCW, 2021 WL 492880 (W.D. Pa. Feb. 10, 2021) (collecting cases on both sides of the issue); *Sussman v. Capital One, N.A.*, No. 14-01945(FLW), 2014 WL 5437079, at *3 (D.N.J. Oct. 24, 2014) (same).

A majority of courts addressing the relationship between 28 U.S.C. § 1447(e) and Rule 15(a)(1), including panels of two circuit courts,[5] have found that a conflict exists between the two provisions in circumstances such as those presented in this case. Some of these courts reason that Rule 15(a)(1) is the more general rule and that it conflicts with the more specific provisions of

---

[5] *See Dillard v. Albertson's, Inc.*, 226 F.3d 642, 2000 WL 1029031 (5th Cir. 2000) (unpublished opinion) ("28 U.S.C. § 1447(e) specifically confers on the district court the responsibility to scrutinize attempted joinder of nondiverse parties in cases previously removed to federal court"); *Mayes v. Rapoport*, 198 F.3d 457, 462-63 (4th Cir. 1999) (intermingling both *Hensgens* factors and fraudulent joinder principles as part of the same analysis).

9

§ 1447(e) when the amendment attempts—after removal to federal court—to add a new, nondiverse party. *See McGrath v. Home Depot USA, Inc.*, 298 F.R.D. 601 (S.D. Cal. 2014); *Andreasen v. Progressive Express Ins. Co.,* 276 F. Supp. 3d 1317, 1327-28 (S.D. Fla. 2017). Other courts simply apply § 1447(e) whenever a nondiverse defendant is added after removal without addressing the difference between amendments as a matter of course and amendments requiring leave of court. *See, e.g., Dillard v. Albertson's, Inc.*, 226 F.3d 642, 2000 WL 1029031 (5th Cir. 2000) (unpublished opinion). In either circumstance, the courts apply § 1447(e) by weighing the factors set out in *Hensgens v. Deere & Co.*, 833 F.3d 1179, 1182 (5th Cir. 1987).[6] The *Hensgens* factors are used to determine whether courts, in exercising their broad discretion, should (1) permit the addition of the nondiverse party and remand, or (2) reject the amendment and retain jurisdiction over the case. *Gumberg Assocs.-Chapel Square*, 2021 WL 492880, at *3-4; *Sussman*, 2014 WL 5437079, at *5. Defendants rely on this line of cases in opposing Plaintiff's Motion for Remand.

A minority of courts, however, find no conflict between § 1447(e) and Rule 15(a)(1), even when a party files an amendment post-removal that adds a nondiverse party. *See McDermott v. CareAllies, Inc.*, No. 2:20-cv-03496-KSH-CLW, ___ F. Supp. 3d ___, 2020 WL 7022749, at *5 (D.N.J. 2020) (citing *Buffalo State Alumni Ass'n v. Cincinnati Ins. Co.*, 251 F. Supp. 3d 566, 575 (W.D.N.Y. 2014), *report and recommendation adopted*, 251 F. Supp. 3d 566, 567 (W.D.N.Y. 2014) (finding no "tension" between § 1447(e) and Rule 15(a)(1))); *see also Matthews Metals Prod., Inc. v. RBM Precision Metal Prod., Inc.*, 186 F.R.D. 581 (N.D. Cal. 1999); *Conover v. United Parcel Service*, Civil Action No. 06-1079 (NLH), 2006 WL 3534157 (D.N.J. Dec. 7, 2006).

---

[6] The *Hensgens* factors are: "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for the amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities." 833 F.2d at 1182.

10

In these cases, the courts apply the "plain language" principle of statutory construction by noting that a plaintiff amending as a matter of course is not "seek[ing] to join" additional defendants within the meaning of 28 U.S.C. § 1447(e).[7] Rather, these courts conclude that, because amendments as a matter of course are automatic and do not require approval of the court, § 1447(e) is not implicated. *Route 27, LLC*, 2011 WL 1256618, at *3 (because a timely amendment under Rule 15(a) does not require court action, it does not fall within the plain language of § 1447(e) as Plaintiff does not "seek" permission to amend).[8]

Courts following the minority rule review the addition of the newly added defendant under the doctrine of fraudulent joinder. *McDermott*, 2020 WL 7022749, at *7. This doctrine—which is usually applied in evaluating the propriety of a nondiverse defendant included in pre-removal pleadings—permits removal to federal court if the nondiverse defendant was "fraudulently" joined. *See In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006). Joinder of a nondiverse defendant is considered fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992); *In re Briscoe*, 448 F.3d at 216 (citing *Abels*, 770 F.2d at 32). Under this doctrine, the fact that a defendant is included in an action for the purpose of defeating diversity jurisdiction does not constitute fraudulent joinder. *Ahearn v. BJ's Wholesale Club, Inc.*, No. 19-3012, 2020 WL 1308216, *5 (E.D. Pa. Mar. 18, 2020); *see also Abels*, 770 F.2d at 32 ("The fact that the

---

[7] The term "seek" is commonly defined as "to try to obtain" or "to ask for; request" or "to make inquiry." *Seek*, WEBSTER'S ENCYCLOPEDIC UNABRIDGED DICTIONARY OF THE ENGLISH LANGUAGE, at 1291 (1989 ed.).

[8] Because "the section of the Venn diagram containing both Rule 15(a)(1) and § 1447(e) is empty," *McDermott*, 2020 WL 7022749, at *5, the argument that § 1447(e)—as the more specific provision—controls, is rejected by these courts.

plaintiffs' motive for joining a [nondiverse] defendant is to defeat diversity is not considered indicative of fraudulent joinder."); *Glastein v. CareFirst Blue Cross Blue Shield*, No. 18-9664-BRM-DEA, 2019 WL 1397488, *4 (D.N.J. Mar. 28, 2019) (same). The removing party carries a "heavy burden of persuasion" to establish fraudulent joinder. *Abels*, 770 F.2d at 32.

### B.   Application of the Different Standards in this Case

Under the circumstances of this case, the Court finds that whether applying the majority view's *Hensgens* standard or the minority view's "fraudulent joinder" standard, the outcome is the same. Weighing the facts and arguments presented by both parties and the unique circumstances of this case leads the Court to conclude that Plaintiff's Amended Complaint joining IMC should be permitted to stand and the case should be remanded to the Superior Court.

#### 1. The *Hensgens* Standard

Under *Hensgens*, 833 F.3d 1179, the Court is tasked with weighing "(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction; (2) whether plaintiff has been dilatory in asking for amendment; (3) whether plaintiff will be significantly injured if amendment is not allowed; and (4) any other factors bearing on the equities." *City of Perth Amboy v. Safeco Ins. Co. of Am.*, 539 F. Supp. 2d 742, 752-53 (D.N.J. 2007), *report and recommendation adopted*, 539 F. Supp. 2d 742 (D.N.J. 2008) (citing *Hensgens*, 833 F.2d at 1182).

With regard to the first factor, Defendants argue that because Plaintiff's attorneys knew of IMC's operations at the oil refinery prior to filing the instant Complaint—but did not initially include IMC as a defendant—indicates that the purpose of Plaintiff's belated addition of IMC after removal was to defeat federal jurisdiction. (Dkt. No. 22 at 19-21). Courts applying *Hensgens* have held that "[w]hen a plaintiff knows about the nondiverse defendant's activities at the time the complaint was originally filed but does not include that person as a party, subsequent attempts to

join that person as a party will be viewed as an attempt to destroy diversity." *Aldorasi v. Crossroads Hosp. & Mgmt Co., LLC*, 344 F. Supp. 3d 814, 826 (E.D. Pa. 2018) (citations omitted).

The Court agrees that the record as presented creates the very strong inference that Plaintiff's addition of IMC as a Defendant is designed to defeat diversity jurisdiction. The record before the Court reveals that Plaintiff's attorneys had streamlined the cases filed between 2013 and 2018 by dismissing defendants other than Hess and HOVIC—including IMC—from existing cases and filing new cases naming only Hess and HOVIC as defendants. It is apparent that Plaintiff's attorneys' decision to focus on Hess and HOVIC, to the exclusion of other entities such as IMC, remained their strategy until after Defendants removed a group of cases in August 2020 to this Court based on the recent HONYC/HOVIC merger. Following the removal, Plaintiff's counsel then took action to add IMC as a defendant in the lawsuits, including the filing of an Amended Complaint in the instant matter.[9] Based on this history, the conclusion seems inescapable that there is a direct link between the removal of cases to this Court and the addition of IMC as a Defendant. Thus, the first *Hensgens* factor weighs in favor of denying joinder and retaining jurisdiction.

The second *Hensgens* factor is whether Plaintiff was dilatory in seeking to amend her Complaint to add IMC. *Hensgens*, 833 F.2d at 1182. Defendants cite to *Albino v. Home Depot*, No. 20-2626-FLW-ZNQ, 2020 WL 12932946, at *5 (D.N.J. 2020) in support of their contention that Plaintiff was dilatory in amending her Complaint. In *Albino*, the plaintiffs in an employment

---

[9] Plaintiff's counsel also voluntarily dismissed a number of the June 2020 cases that had been removed to this Court and refiled them in the Superior Court with IMC named as an additional Defendant. Further, counsel filed at least 140 new cases in the Superior Court in November 2020 naming Hess, HONYC/HOVIC *and* IMC as Defendants. *See, e.g., Farrow v. Hess Corp., et al.*, Case No. 1:2021-cv-0017, Dkt. No 1; *Peter v. Hess Corp., et al.*, Case No. 1:2021-cv-0100; and *Louis v. Hess Corp., et al.*, 1:2021-cv-0158.

13

dispute attempted to add—after removal—two individual nondiverse defendants of whose involvement in the matter they were aware at the time the original complaint was filed. The court found that plaintiffs were dilatory in filing the amendment because of plaintiffs' prior knowledge of the nondiverse defendants, and because the amended complaint failed to allege any new factual allegations involving those defendants. *Id.*[10] The court also found that plaintiffs were dilatory, in part, because they proffered no reason why they waited to add these defendants until 19 days after the removal. *Id*.

While *Albino* supports Defendants' position, there are other considerations that bear on the dilatoriness factor that suggest otherwise. Specifically, Plaintiff filed her Amended Complaint within the time permitted under Rule 15(a)(1) for the filing of an amendment as a matter of course.[11] *See Gumberg Assocs.-Chapel Square*, 2021 WL 492880, at *4 (party who initially sued Loan Servicers was not dilatory in amending the Complaint to add nondiverse Lenders when it promptly filed the amendment after removal within the time for an amendment as a matter of course). Further, there can be no claim that the addition of IMC within three weeks of the filing of Defendants' Answers will somehow prolong the case, as discovery has not yet started. *See Agostino v. Costco Wholesale Corp.*, No. 19-8976(MCA)(MAH), 2019 WL 6080242, at *5 (D.N.J. June 24, 2019) (even if plaintiff knew of individual defendant, plaintiff not dilatory for seeking to amend less than four months after action commenced when there had been no scheduling

---

[10] The *Albino* opinion appears to conflate the plaintiffs' knowledge of the new defendants' involvement—generally cited when addressing the first *Hensgens* factor (plaintiffs' intent)—with the second factor weighing whether plaintiffs were dilatory with their amendment.

[11] Plaintiff's delay in serving Defendants with the Superior Court summons—after Hess' August 2020 removal of some cases based on the recent HONYC/HOVIC merger—gives credence to her claim that her attorneys were working to add IMC as a Defendant in this case and other cases while those cases were still in the Superior Court. Plaintiff's counsels' efforts were apparently interrupted by Hess' removal of this and other cases before Hess and HOVIC had been served.

conference, no discovery had occurred, and no trial had been set); *Confessore v. AGCO Corp.*, No. 14-cv-7262-FLW, 2015 WL 4430472, at *6 (D.N.J. July 20, 2015) (plaintiff not dilatory in seeking to amend three weeks after the action was removed because case was still in its infancy); *Kahhan v. Mass. Cas. Ins. Co.*, No. 01-1128, 2001 WL 1454063, at *2 (E.D. Pa. Nov. 14, 2001) (amending post-removal complaint—seeking to add defendant's agent—when case was in its infancy and joinder would not likely prolong the litigation was not dilatory under *Hensgens*). Moreover, the context in which the amendment is occurring is also of significance in assessing dilatoriness. Unlike *Albino*—a single case—the amendment here was occurring in a context where numerous cases were being filed, removed, dismissed, and amended in local and federal courts as the parties jockeyed mightily for their chosen forum.[12] Notwithstanding all of this activity, the amendment— filed 19 days after removal—was still filed within the period for amendments as a matter of course and before the commencement of any discovery.

Under the totality of the circumstances here, the Court concludes that Plaintiff was not dilatory in seeking to amend her Complaint to add IMC. Accordingly the second *Hensgens* factor weighs in favor of permitting joinder and remanding the case to the Superior Court.

The third *Hensgens* factor is whether plaintiff will be significantly injured if amendment is not allowed. Under the circumstances of this case, the Court concludes that Plaintiff will be significantly injured if she is required to litigate cases that have a common body of facts in two

---

[12] The timeline reflected in defendants' exhibits delineating the various groups of cases filed and the parties' handling of the same after the HONYC/HOVIC merger reveals the evolving strategies of counsel for *both* plaintiffs and defendants in attempting to place these related cases in their preferred forum. While plaintiffs' attorneys were adding a nondiverse defendant in response to the removal, and voluntarily dismissing cases in federal court prior to defendants' answers and refiling them in Superior Court, defendants' counsel were removing cases before being served with process and filing answers immediately upon removal.

different fora—the Superior Court and the District Court.[13] This problem is compounded by the fact that Defendants' affirmative defenses include, *inter alia*, allegations that any negligence or toxic exposure was the responsibility of Plaintiff or Defendants' *contractors*. (Dkt. Nos. 3 at 13-17; 6 at 13-17). *See Massaro v. Bard Access Sys. Inc.*, 209 F.R.D. 363, 369 (E.D. Pa. 2002) (joinder allowed to avoid Plaintiff prosecuting two claims arising from the same set of facts in two separate fora, particularly to avoid each defendant pointing to the "proverbial empty chair of the other as the more culpable party."). This also creates a risk of inconsistent rulings on liability and damages. *Stavitski v. Safeguard Prop. Mgmt., LLC*, No. 17-cv-2033, 2018 WL 501646, at *4 (D.N.J. Jan. 22, 2018). In addition, if Plaintiff is compelled to prosecute two separate actions involving common facts in two different fora, it will likely increase her litigation costs. *See, e.g., Kahhan*, 2001 WL 1454063, at *2 (an increase in litigation costs is evidence of injury to plaintiff). Accordingly, the Court concludes that Plaintiff will be significantly injured without the amendment, and this third *Hensgens* factor, therefore, weighs in favor of permitting joinder and remanding the case.

In considering other equities, the final *Hensgens* factor weighs in favor of allowing the amendment adding IMC and remanding the case to the Superior Court. Unlike the many cases cited by Defendants, this case is not a stand-alone action operating independently, but one of a close-knit group of cases—earlier versions of which have been litigated in the Superior Court for several years and with other like cases now pending there. With this history, initiating a new group of similar cases in the District Court would result in an inefficient use of court resources. *City of*

---

[13] This includes having to litigate against Hess and HONYC/HOVIC in the District Court and against IMC in the Superior Court in a given case, as well as litigating these similar cases as a whole in two different fora.

*Perth Amboy*, 539 F. Supp. 2d at 749; *see also Kahhan*, 2001 WL 1454063, at *3 (requiring plaintiff to pursue claims in two courts arising from a common nucleus of facts and raising similar issues strains judicial resources). Based on the record before the Court, it appears that the Superior Court's Complex Litigation Division previously developed an established process and system to handle the precursors to these cases. (Dkt. Nos. 22-2; 22-6; 22-7). In addition, having handled similar matters up to the point of trial, various discovery issues and other substantive local law issues may well have been addressed by the Superior Court. Starting afresh here in the District Court would be the antithesis of judicial economy. Accordingly, this final *Hensgens* factor weighs in favor of permitting joinder and remanding to the Superior Court.

In view of the foregoing, the Court finds that the *Hensgens* factors weigh in favor of allowing Plaintiff's Amended Complaint adding IMC as a Defendant to stand, and remanding the case to the Superior Court.

### 2. The Fraudulent Joinder Standard

Under the minority view applied by courts, Plaintiff's Amended Complaint would be evaluated under the fraudulent joinder doctrine. This doctrine requires the removing party to establish that the plaintiff has "no reasonable basis in fact or colorable ground supporting the claim against the nondiverse defendant, or no real intention in good faith to prosecute the action against the defendants or seek a joint judgment." *Batoff*, 977 F.2d at 851.

For a defendant to establish that there is no colorable claim against the nondiverse party, the defendant is required to show that the claim is "wholly insubstantial and frivolous." *Id.* at 851-52 (quotations and citations omitted). The plaintiff's complaint against the nondiverse defendant does not need to be sufficient to withstand a Rule 12(b)(6) motion. Rather, the plaintiff's claim is sufficient if there is any "possibility that a state court would find that the complaint states a cause

of action against any one of the resident defendants." If such a possibility exists, the joinder must be found to be proper and the case remanded to state court. *Id.* Further, a plaintiff need only show that she has *one* colorable claim against a nondiverse defendant, even if other claims against that defendant are barred. *Victorin v. Jones Lang LaSalle*, No. 20-18123-KM-ESK, 2021 WL 651200, at *2 (D.N.J. Feb. 18, 2021). A finding of fraudulent joinder "is usually reserved for situations where recovery from the nondiverse defendant is a clear legal impossibility." *Benjamin v. JBS S.A.*, No. 20-cv-2594, ___ F. Supp. 3d ___, 2021 WL 308133, at *5 (E.D. Pa. Jan. 29, 2021) (inconsistent documents as to whether Plaintiff's employer was nondiverse defendant or out-of-state defendant insufficient to establish fraudulent joinder).

In the instant case, Defendants do not attempt to argue that Plaintiff lacks a colorable claim against IMC. Instead, they concede that IMC worked extensively at HOVIC's St. Croix facility during the period relevant to Plaintiff's claims. Indeed, Defendants assert that there was substantial deposition testimony in earlier cases that notified Plaintiff's attorneys about details of IMC's work at the HOVIC oil refinery. (Dkt. No. 22 at 3-5). In addition, Plaintiff claims that Hess and HOVIC have filed indemnification and/or contribution claims against IMC in connection with some cases raising claims similar to those made by Plaintiff. (Dkt. No. 10 at 3). Thus, there is no dispute that Plaintiff has a colorable claim against IMC within the meaning of the fraudulent joinder doctrine.

The second basis upon which to find fraudulent joinder is a determination that Plaintiff lacks a good faith intent to prosecute the claims against IMC. Because Defendants rely almost exclusively on the *Hensgens* factors, Defendants relegate this point to a footnote. (Dkt. No. 22 at 15, n.21). In that footnote, Defendants rely on *Bentley v. Merck & Co.*, No. 17-1122, 2017 WL 2311299 (E.D. Pa. May 26, 2017).

18

In *Bentley*, the Court was faced with ten cases filed against Merck & Co., Inc., Merck Sharp & Dome, Inc., and Ann Redfield, an employee of Merck, relating to the effects of Merck's drug Zostavax. 2017 WL 2311299, at *1. The cases were filed in state court in Pennsylvania, where Defendant Redfield was a citizen, but removed to federal court by defendants. *Id.* Plaintiffs filed motions to remand because of lack of complete diversity and because of Redfield's citizenship in the forum state. *Id.* In defendants' notices of removal, they asserted that Redfield was fraudulently joined because plaintiffs had no real good faith intention to prosecute their claims against her. *Id*. at 2 In support of this assertion, defendants pointed to another case filed by plaintiffs' attorneys against the same defendants in which the claims against Redfield had been dismissed pursuant to a stipulation. *Id*. (citing *Juday v. Merck & Co., Inc.*, No. 16-1547 (E.D. Pa. filed April 5, 2016)).[14] In addition, in oral argument in the *Bentley* case, Plaintiffs' attorney conceded that Plaintiffs had no intention of pursuing judgments against Redfield in light of Merck's financial status. *Id*. at 3. The Court in *Bentley* determined that this indicated no intent by Plaintiffs in the *Bentley* cases to actually pursue claims against Redfield, an individual, in light of the presence of Merck. *Id*. at *3.

While the Court finds some similarity between this case and *Bentley*, there are some important differences as well that render the analogy to *Bentley* less persuasive. Here, Plaintiff has sued a business, rather than an individual. IMC is not alleged to be defunct or insolvent. Further, the fact that Plaintiff's attorneys "streamlin[ed]" the prior litigation—Defendants' own terminology (Dkt. No. 22 at 5)—by focusing on Hess and HOVIC, does not mean that Plaintiff will not pursue her claims against IMC. Nor, importantly, is there any concession here—as in *Bentley*—that Plaintiff does not intend to pursue her claim against IMC. Accordingly, the record

---

[14] The *Bentley* decision does not identify Redfield's position with Merck nor the basis for her dismissal from the *Juday* case. 2020 WL.2311299, at *2.

before the Court does not lead to the Court to conclude that Plaintiff lacks a good faith intention to pursue her claims against IMC.

In view of the foregoing, the Court concludes that Defendants have failed to carry their burden of establishing fraudulent joinder. Accordingly, allowing the amendment and remanding the case to the Superior Court is the appropriate resolution under the fraudulent joinder analysis.

## IV. CONCLUSION

In view of the foregoing, the Court rejects Defendants' arguments that Plaintiff's Amended Complaint fails under the § 1447(e)/*Hensgens* standards. Rather, based on a weighing of the *Hensgens* factors under the particular circumstances of this case, the Court concludes that the Amended Complaint should stand. Alternatively, Defendants have failed to carry the heavy burden of proving fraudulent joinder as set out in *Briscoe* and *Abels*. Accordingly, Plaintiff's Amended Complaint will be allowed to remain and Plaintiff's Motion to Remand will be granted.

An appropriate Order accompanies this Memorandum Opinion.

Dated: May 25, 2021

_____/s/_____
WILMA A. LEWIS
District Judge